UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN P. MARVIN,

    Plaintiff,

v.

    Case No. 08-14030

    Hon. John Corbett O'Meara

DAKOTA RESTAURANTS, INC.,
a Michigan corporation,

    Defendant.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed August 28, 2009, which has been fully briefed. The court heard oral argument on October 29, 2009, and took the matter under advisement. For the reasons explained below, Defendant's motion is granted.

**BACKGROUND FACTS**

Plaintiff Shaun Marvin is suing his former employer, Dakota Restaurants, for disability discrimination. Dakota owns and operates nine "Checkers" fast-food restaurants in the metropolitan Detroit area. Steve Sawchuk is the president and owner of Dakota; he makes all significant personnel decisions, including those involving hiring, promotion, raises, and termination.

In 1999, Dakota hired Plaintiff as a crew member at the store in Clawson, Michigan. From 1999 to 2005, Plaintiff regularly failed to report to work approximately two times per month. He developed a drinking problem between 2003 and 2005, during which time he would drink beer in his car during work hours.

In spring 2005, Plaintiff told the general manager of the Clawson store, Paul Battey, that he was checking himself into an alcohol rehabilitation center and needed time off from work. Battey was very supportive of Plaintiff and told him that his job would be waiting for him when he returned. Plaintiff returned to work in June 2005. Sawchuk was aware that Plaintiff checked into a alcohol rehabilitation center.

When he returned to work, Plaintiff performed his job as a crew member well. He received good performance reviews and his attendance improved significantly. In early 2006, Sawchuk promoted Plaintiff to shift manager, giving him the responsibility of running the Clawson store during his shift. Plaintiff also received three raises during 2006 and 2007.

In fall 2007, Sawchuk considered Plaintiff for another promotion, from shift manager to general manager of the Clawson store. Sawchuk also considered other candidates for the job. In September 2007, Sawchuk put Plaintiff in charge of the Clawson store on a trial basis, as acting general manager.

During this time, Sawchuk asked Tracy Pearcy, the general manager of another Dakota store and Sawchuk's daughter, to evaluate the Clawson store and to report back to him. Pearcy allegedly observed some problems involving cash-handling procedures and operational issues. Around the same time, Plaintiff violated a cash- handling policy by failing to make a bank deposit and leaving $983 in cash from the store in his car glove compartment. Plaintiff admitted that he had forgotten to make the deposit and was disciplined in writing for the infraction.

In light of these issues, Sawchuk decided to delay naming a general manager for the Clawson store. Def.'s Ex. A at ¶ 14. He decided to send Pearcy to the Clawson store to further train Plaintiff before determining who would become general manager.

In the meantime, Plaintiff was becoming impatient, because he had worked as the acting general manager for six weeks and had not received the promotion. He alleges that when he asked Paul Battey about it, Battey responded that because of the "skeletons in your closet," Sawchuk wanted to take his time in thinking through the decision. Battey tried to encourage Plaintiff to be patient and "hang in there."

On October 22, 2007, Battey informed Plaintiff that Pearcy would be coming to the Clawson store to work with him. Plaintiff responded that "this is bullshit." Pl.'s Dep. at 98. Plaintiff then went outside to smoke a cigarette; after that, he finished his shift.

The next day, October 23, 2007, Plaintiff was scheduled to work, but did not show up. He testified that he "was very upset. I couldn't even bring myself to go to work nor to face any of those people." Id. at 161-62. Plaintiff admits that he did not inform anyone at work that he was not coming in. Id. at 162 ("I would have had to call Paul [Battey], and I really did not want to speak to him that day."). Plaintiff also admits that Paul Battey called him, but that he did not answer the call. Id. at 174.

The following day, October 24, 2007, Plaintiff was not scheduled to work, but went into the store to pick up his paycheck. When Plaintiff asked Pearcy for his check, she told him that he would need to speak to Battey to get it because Plaintiff did not show up for work the previous day. Plaintiff asked her when he was scheduled to work next; Pearcy allegedly told him that he had been taken off the schedule. Plaintiff testified about the incident as follows:

> She informed me that I had been taken off the schedule. And I said, why? And she informed me – she said, you know why, you did show up yesterday. And I said, so you are firing me for not showing up one day? And she said, Shaun, you are taken off the schedule. You need to speak with Paul about this. I got upset. I believe I called her a bitch. And I believe I said, fuck you, and I walked out of the vestibule.

3

> As I was walking back to my car, she leaned out the passenger side drive through window, said, Shaun, why are you acting like this? What's wrong with you? And once again I said, fuck you, bitch, and I got in my car.

Pl.'s Dep. at 177.

Plaintiff alleges that he then spoke to Battey by phone, who told him to meet Battey at the store and to bring his keys and uniforms. (Battey disputes that he directed Plaintiff to bring his keys and uniforms.) Plaintiff testified about that meeting as follows:

> A: I asked why I had been taken off the schedule. He asked what happened to me yesterday. I said I didn't feel good.
> Q: So you lied to him?
> A: Yeah.
> Q: What happened?
> A: I said, you know, why have I been taken off the schedule? He said, well, we assumed you fell off the wagon.
> Q: And those were his specific words?
> A: Correct.
> Q: Anything else?
> A: After that, I said – at that point, I said, fuck you, Paul, and he said, well we need to discuss this. I said, fuck you, you will hear from my attorney. I am done talking about this. You will hear from my attorney.
> Q: So are you saying that it was a cordial conversational tone until Paul said, we assumed you fell off the wagon?
> A: Yeah, it was, you know, me asking for my paycheck. I wasn't being hostile. He wasn't being hostile. When he said – when I asked why I was taken off the schedule, when he responded that we assumed you fell off the wagon, I got very upset. And like I said, I said, fuck you, Paul, you will hear from my attorney. He said, we need to discuss this. I said, fuck you, you will hear from my attorney, and got in my car and left.

Pl.'s Dep. at 188-89.

Plaintiff never returned to work after that. He asserts that Dakota fired him; Dakota contends that the only person who had that authority was Sawchuk, who did not fire him.

4

**LAW AND ANALYSIS**

Dakota seeks summary judgment on Plaintiff's one-count complaint of disability discrimination under the Americans with Disabilities Act. Plaintiff contends that Dakota failed to promote him and fired him because of his disability.

**I.     Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When analyzing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To survive the motion, the nonmoving party must present sufficient evidence for a reasonable jury to find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**II.    ADA Claim**

To state an ADA claim, a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified to perform the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action solely because of his disability. See Cotter v. Ajilon Serv., Inc., 287 F.3d 593, 597-98 (6th Cir. 2002) (citing Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996)). Plaintiff contends that he can present both direct and circumstantial evidence of discrimination in support of his claims. Either way, as a threshold matter, Plaintiff must show that he is disabled within the meaning of the ADA. See Monette, 90 F.3d at 1178.

The ADA defines disability as follows:

> (2) **Disability**

> The term "disability" means, with respect to an individual –
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102 (2005).[1]

Plaintiff argues, with little analysis, that he fits the definition of disability in § 12102(2)(A), (B), and (C). See Pl.'s Br. at 8-9. Plaintiff contends that, before he sought treatment in 2005, his alcoholism had progressed to the point that it was "affecting his ability to walk" and carry out normal activities. Pl's Br. at 8. Plaintiff does not provide evidence, however, that his alcoholism "*substantially limited*" one or more of his major life activities, either in 2005 or at the time he was being considered for the promotion to general manager in 2007. See Roig v. Miami Fed. Credit Union, 353 F. Supp. 2d 1213, 1216 (S.D. Fla. 2005) ("Substantially limits is a severe standard and must include permanent or long-term restrictions on performance of the life activity.") (citing Toyota Motor Mfg. Ky. Inc. v. Williams, 534 U.S. 184, 198 (2002)); Cotter v. Ajilon Servs., Inc., 287 F.3d 593, 598 (6th Cir. 2002) ("As we have held, '[a] single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgment sought by the employer.'"). Absent evidence that his alcoholism substantially limited a major life activity, Plaintiff cannot show he is disabled pursuant to § 12102(2)(A). See, e.g., Stuart v. Danka Corp., 986 F. Supp. 741, 744 (E.D.N.Y. 1997) (holding that to demonstrate a disability, a "recovering alcoholic like plaintiff must

---

[1] The definition of disability was amended by the ADA Amendments Act of 2008, which became effective January 1, 2009. The new definition does not apply retroactively to govern conduct occurring before the effective date. Milholland v. Sumner Cty. Bd. of Ed., 569 F.3d 562, 565-67 (6th Cir. 2009). Accordingly, the court will not apply the new definition here.

6

establish that his alcoholism has substantially limited a major life activity."); Roig, 353 F. Supp. 2d at 1216 (finding recovering alcoholic not disabled under the ADA).

Plaintiff also claims that he has a record of a disability pursuant to § 12102(2)(B). "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. . . . The record must be one that shows an impairment that satisfies the ADA." See Colwell v. Suffolk Cty. Police Dept., 158 F.3d 635 (2d Cir. 1998) (citation omitted). Plaintiff refers to a return-to-work slip prepared by his doctor as a record of his disability. See Pl.'s Ex.1. The slip does not, however, refer to Plaintiff's alcoholism at all. Nor does this record indicate that Plaintiff had an impairment that satisfies the ADA. Therefore, Plaintiff's claim in this regard fails.

Plaintiff also contends that his employer was aware of his treatment for alcoholism and, therefore, "regarded" him as disabled pursuant to § 12102(2)(C). Under this definition, Plaintiff must show that he was "'regarded as having . . . [an] impairment that substantially limits' his major life activity of working in a broad class of jobs." Milholland v. Sumner Cty. Bd. of Ed., 569 F.3d 562, 567 (6th Cir. 2009) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999)). The undisputed evidence belies Plaintiff's claim here. Defendant allowed Plaintiff to return to his job after his alcohol rehabilitation, promoted him to shift manager, and gave him three raises. Although Plaintiff did not obtain immediately the promotion he wanted, there is no evidence that Defendant thought Plaintiff's alcoholism "substantially limited [him] in [his] life activity of working in a *broad class of jobs*." Id. at 568 (teacher was not regarded as disabled "simply because [the defendant] did not give her the administrator job she desires") (emphasis added). Indeed, Plaintiff continued to work for Defendant, including serving as a shift manager, for two years after he first received

7

treatment. Even if Defendant was concerned about Plaintiff's ability to perform the general manager position, it does not follow that it regarded him as disabled. See id. ("'[T]he inability to perform a single, particular job does not constitute a substantial limitation' on her life activity of working."); Cotter, 287 F.3d at 599 ("An employer does not necessarily regard an employee as disabled by finding the employee incapable of satisfying the singular demands of a particular job.").

Because he cannot demonstrate that he is disabled, has a record of a disability, or is regarded as disabled under the ADA, Plaintiff's claim must fail.[2]

**ORDER**

Therefore, IT IS HEREBY ORDERED that Defendant's August 28, 2009 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's September 18, 2009 motion in limine is DENIED AS MOOT.

s/John Corbett O'Meara<br>
United States District Judge

Date: November 23, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, November 23, 2009, using the ECF system and/or ordinary mail.

s/William Barkholz<br>
Case Manager

---

[2] The court also doubts whether Plaintiff can show that he suffered an adverse employment action as a result of his alleged disability. Because Plaintiff cannot show that he is disabled, however, the court need not reach this question.